UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEEPAK C. FADIA,

                                    Plaintiff,           No. 08-CV-6268 CJS

   -vs-

                                                            DECISION AND ORDER

NEW HORIZON HOSPITALITY,

                                  Defendant.

_____

APPEARANCES

For Plaintiff:             Deepak C. Fadia, *Pro Se*
                              214 West Bend Drive
                              Rochester, New York 14612

For Defendant:           David K. Hou, Esq.
                              Boylan, Brown, Code, Vigdor & Wilson, LLP
                              2400 Chase Square
                              Rochester, New York 14604

INTRODUCTION

This is an action in which Deepak C. Fadia ("Plaintiff"), proceeding *pro se*, alleges that his former employer, New Horizon Hospitality ("Defendant"), discriminated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by terminating his employment. Now before the Court is Defendant's motion [#42] for summary judgment. For the reasons that follow, Defendant's application is granted and this action is dismissed.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most favorable to Plaintiff. At all relevant times Defendant operated the Crowne Plaza Hotel in the City of Rochester, New York. On or about July 17, 2006, Defendant hired Plaintiff as a hotel security guard.[1] Plaintiff was sixty-two years of age at the time he was hired. Defendant maintains that during the period of Plaintiff's employment, it issued him several disciplinary warnings. More specifically, Defendant contends that: On one occasion, Defendant counseled Plaintiff after a guest's camera, which had been entrusted to Plaintiff to return to the guest, disappeared;[2] on another occasion, Defendant counseled Plaintiff after he failed to appear for an evening shift; on other occasions, Defendant counseled Plaintiff for matters such as failing to inventory keys, failing to lock doors, and failing to deliver laundry to hotel guests. On September 16, 2007, Plaintiff's supervisor, Ray Bassett ("Bassett"), and another employee, Thomas Keilman ("Keilman"), indicated that they found Plaintiff "sleeping on the job at the front desk of the hotel, with the hotel's front door unlocked and ajar." (Def. Stmt. of Facts ¶ 21). On September 19, 2007, Defendant terminated Plaintiff's employment.

On or about October 1, 2007, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant discriminated against him because of his age. In support of the complaint, Plaintiff stated that he was forced to work "seven day a week continue up to three-week couple

---

[1] In his employment resume, Plaintiff claims to hold college degrees in Accounting, Calculus, Physics, and Chemistry. (Tice Aff., Ex. A).

[2] Defendant did not accuse Plaintiff of stealing the camera, but faulted him for failing to secure the camera.

of times." [sic] Plaintiff stated that he eventually began working part-time. Plaintiff further stated that Bassett was his supervisor, and that on September 22, 2007, Bassett asked him to sign a disciplinary "write up." Plaintiff indicated that he refused to sign the "write-up," and Bassett told him that he was "not serious about work. I am too old for work. I have to leave. Currently I am sixty four year old. I need your help to solve this problem." On or about March 17, 2008, the EEOC dismissed the complaint, finding that "[t]he evidence in this case does not support a conclusion that the complainant was discriminated against on the basis of his age." Instead, the EEOC stated, in pertinent part: "The fact that the complainant was hired at the age of 62 indicates that the respondent would not have a propensity to terminate the complainant [two] years later strictly because of his age. The evidence indicates that after verbal and written counseling the complainant failed to improve his performance and as a result his employment was terminated."

On June 23, 2008, Plaintiff commenced this action. In April 2009, Defendant served Plaintiff with a demand for interrogatories [#28]. The demand included the following interrogatories:

> <u>Interrogatory No. 2</u>
> With respect to Plaintiff's allegations of harassment and/or age discrimination set forth in the Complaint for this action, please set forth with specificity for each incident ("Incident") claimed where Plaintiff suffered harassment and/or age discrimination:
>
> A. The date of the occurrence of each Incident,
> B. Each person who was present during the Incident'
> C. The location of each Incident,
> D. The substance of any alleged comments made during each incident,
> E. The date, if any, that you complained of or reported the Incident . . . .
>
> ***

> Interrogatory No. 4
> Please set forth the factual basis for your allegations that Defendant perpetrated age discrimination and/or harassment against the Plaintiff.

(Defendants First Set of Interrogatories to Plaintiff [#28]). Plaintiff did not respond to the interrogatories.

On May 15, 2009, Defendant deposed Plaintiff. (Stiller Affirmation, Exhibit E). Since Plaintiff had not responded to Defendant's interrogatories, Defendant orally asked Plaintiff the interrogatory questions during the deposition. Plaintiff testified that during his employment Vince McIntyre ("McIntyre") was the head of hotel security. (Pl. Dep. at 17). Plaintiff initially testified that he never received any disciplinary warnings during his employment. (*Id*. at 24). However, he later stated that on three or four occasion in 2006 and 2007, McIntyre and/or Bassett wrote "comments" about his work performance, and asked him to sign them, but he refused. (*Id*. at 38-41). Plaintiff generally denied having any memory of any of the incidents for which he was reprimanded. (*See, e.g., Id*. at 77-79).[3] Plaintiff stated that on one occasion, when he complained that some guest baggage was too heavy to carry, an employee named Eric Peters ("Peters") told him, "if you don't do it, they are going to fire you. They have fired so many security officers – last five years." [sic] (*Id*. at 29-30).

Also, during the deposition, Plaintiff stated that on one occasion, in or about the summer of 2007, Bassett told him to "put some chair on his car so he could take it home at night." (*Id*. at 30-31, 35). Plaintiff believed that Bassett was stealing the chair,

---

[3] With regard to one incident on May 21, 2007, in which Bassett reportedly gave Plaintiff a verbal counseling concerning Plaintiff's handling of a guest's packages, Plaintiff denies that he ever received such a counseling. (*Id*. at 80). Plaintiff also denied other incidents, such as an incident that allegedly occurred on May 19, 2007, in which he allegedly refused to unlock the hotel's kitchen. (*Id*. at 83-86).

and refused to take it to Bassett's car. (*Id*. at 31). Plaintiff states that as a result, Bassett "got mad" and gave him a "dirty look." (*Id*. at 32) ("He just got mad one me. That's it. Dirty look."). Plaintiff reported the incident to a supervisor, Jackie Hayden ("Hayden"). (*Id*.). Plaintiff maintains that as a result of this incident, Bassett was "mad" at him, and retaliated against him by falsely accusing him of wrongdoing, including sleeping on the job. (*Id*. at 82-83); (*see also, Id*. at 86) ("This is all made up from Mr. Ray [Bassett]."); (*Id*. at 89) ("This was – make up because I complain about my boss. I know that."); (*Id*. at 94) (Stating that Bassett made up the allegation about Plaintiff sleeping on the job, because he was stealing, "taking all this stuff to his house.").

Plaintiff further testified that apart from the foregoing incidents he described at his deposition,[4] there were no other incidents to support his claim of discrimination. (*Id*. at 46); (*see also, id*. at 52: "Q. Are there any other bases for you claim of age discrimination other than what you have already testified to today? A. No."). Plaintiff also testified that he had no documents to support his claim. (*Id*. at 43). Plaintiff did not testify to any incident indicating age-related bias. More specifically, Plaintiff did not indicate that anyone made any age-related comments to him or about him. Plaintiff also stated that he never complained about discrimination during his employment. (*Id*. at 67-68).

Following pretrial discovery, Defendant filed the subject motion for summary judgment (Docket No. [#42]).[5] In support of the application, Defendant states that it terminated Plaintiff's employment because he "was a substandard employee who

---

[4]To summarize, the incidents which Plaintiff testified involved working long hours, having to carry heavy luggage, and being retaliated against by Bassett after Plaintiff accused Bassett of stealing.

[5]Defendant provided Plaintiff with the Notice to *Pro Se* Litigants required by Local Rule of Civil Procedure 56.2. (Docket No. [#43]).

repeatedly failed on numerous occasions to perform his duties." (Tice Aff. at ¶ 2); (*see also, id*. at ¶ 28) ("On September 15, 2007, Mr. Fadia was given an annual performance appraisal, the result of which was that he scored only in the sixty-fourth percentile with respect to most of his duties; he was a substandard employee who needed significant improvement.").[6]  Defendant further states that on the day following Plaintiff's poor performance review, Keilman and Bassett found Plaintiff sleeping during his shift, and that as a result, Defendant terminated Plaintiff's employment. (*Id*. at ¶ 29). Moreover, Defendant states that after it terminated Plaintiff's employment, it learned that he had failed to disclose on his employment application that he had been convicted of conspiracy to commit bank fraud a few years earlier.[7]

In support of its application, Defendant submits an affidavit [#46] from Linda Guman ("Guzman"), who was Director of Human Resources at the hotel at all relevant times. Guzman states, in pertinent part:

> Mr. Fadia was terminated for lawful, non-discriminatory reasons, entirely unrelated to his age. He was a substandard employee who repeatedly failed to perform a variety of tasks, and the last straw of his poor performance was that he was found sleeping on the job while at the hotel's front desk, despite having been formally warned on numerous other occasions that any further violation of hotel policy could result in termination.

*Id*. at ¶ 2. Guzman further states:

> [A]t all relevant times during [Plaintiff's] employment, the hotel employed in excess of 143 employees, near[ly] forty of which were employees forty years old or older, and of which approximately ten were sixty years old or older, including Barbara Tice, the Rooms Division Manager, one of Mr. Fadia's supervisors.

---

[6] When shown his performance appraisal at the deposition, Plaintiff initially stated that he did not recall it. (Pl. Dep. at 59). Later, Plaintiff stated that he had never seen the appraisal before. (*Id*. at 62).

[7] Defendant did not learn of this omission until after it had terminated Plaintiff's employment, and the Court does not consider the incident in resolving the instant motion.

*Id*. at ¶ 6. Guzman also indicates that Plaintiff was sixty-two years old when he was hired, which negates any inference of age-related discriminatory animus. *Id*. at ¶ 9.

In moving for summary judgment, Defendant contends that Plaintiff's age was not a factor in any of its disciplinary decisions. (*Id*. at ¶ 31). Defendant states that although Plaintiff is in a protected category because of his age, he cannot otherwise demonstrate a prima facie case of age discrimination, and that in any event, Defendant had a legitimate non-discriminatory reason for terminating Plaintiff's employment. (See, Def. Memo of Law at 8) ("During the short, one year tenure of his employment, for which he largely worked part time, and then later only two days a week, Mr. Fadia was counseled on various occasions regarding deficiencies in his performance, and also received six formal employee warning reports.").

On December 11, 2009, the Court issued a Motion Scheduling Order [#51], directing, *inter alia*, that Plaintiff file any responsive papers on or before January 15, 2010[8], and that Defendant file any reply on or before February 5, 2010. The Motion Scheduling Order did not permit sur-reply papers.

In opposition to the motion, Plaintiff makes various arguments. First, he contends that he was required to do tasks that were not part of his job description, which he calls "exploitation." (Plaintiff's Response [#50] at 2). Plaintiff also maintains that "all departments" of the hotel conspired to have him fired. (*Id*. at 4). Specifically, he alleges that McIntyre, Bassett, Guzman, and Division Room Manager Barbara Tice ("Tice"), all conspired together against him. (*Id*.). He further states, for the first time in this action, that McIntyre and Bassett showed favoritism to "employees that are not the

---

[8]Plaintiff actually filed his initial responsive papers [#50] on November 30, 2009, prior to the Court issuing the Motion Scheduling Order. However, Plaintiff's papers were not verified. On January 20, 2010, Plaintiff submitted an additional document [#52], intended to swear to the truth of the earlier submission.

same age as myself," though he does not specifically allege that the preferentially-treated employees were younger. (*Id*. at 6). Plaintiff also alleges that he was "underpaid." (*Id*. at 7).

In its Reply papers [#53, 54], Defendant contends that Plaintiff's factual allegations are "utterly specious," and it reiterates that Plaintiff has failed to demonstrate a prima facie case.

After Defendant filed its reply papers, and contrary to the Local Rules of Civil Procedure, Plaintiff filed two documents that are essentially sur-reply papers. (Docket Nos. [#58, 59]).[9] In the first of these, Plaintiff alleges that when he would refuse to do certain jobs, Bassett would tell him that he was not serious about his work, and that he was "too old." ([#58] at 1). Plaintiff further states:

> In looking at the letter I previously submitted to the court dated July 20, 2008, I mentioned about being threatened by my former supervisor Robert Basset, in which he stated that if I did not do as I was told I would be written up. Also, he would ask me to do other things like taking company property load [sic] in his vehicle for personal use, which I refused to do. He then would call me back and tell me that I am not serious about my work, saying that I am too old, and that I need not work there anymore. This has been a continuous ongoing process . . . .

(*Id*. at 1). In response to this assertion, the Court reviewed the electronic docket, and found no filing dated July 20, 2008. The Court searched further, however, and found in the Court's paper file a letter from Plaintiff, dated July 20, 2008, which was received by the Court on July 21, 2008. In the unsworn letter, Plaintiff states, in pertinent part:

> I was also threatened by my supervisor, Robert Bassett, that if I didn't do as I was told, that he was going to write me up. Also he would ask me to do other things for him such as take company property and load it in his vehicle for his own personal use, which I refused to do. He would then

---

[9]*See*, Local Rule of Civil Procedure 7.1(c) ("Sur-reply papers shall not be permitted unless otherwise ordered by the Court.").

>call me and tell me how I am not serious aabout work, say that I am too old, and that I need not work there anymore.

(Fadia letter dated July 20, 2008). The letter further denies that Plaintiff was sleeping on the job, and states, "In actually, [sic] I was really suffering from fatigue caused by bull[y]ing." Additionally, Plaintiff states that, "If my supervisor, Robert Bassett, stated that my work performance was poor it was due to the inadequate training that I received by him and his staff in fulfilling my job duties." *Id*.

The Court also reviewed an undated letter, attached to the Complaint in this action which was filed on June 23, 2008, addressed to the New York State Division of Human Rights, which states, in pertinent part:

>My supervisor['s] name is Robert Bassett. Robert Bassett asked me to sign the paper [charging Plaintiff with sleeping on the job] on September 22, 2007. I refuse to do it. He called me next day I am nor [sic] serious about work. I am too old for work. I have to leave. Currently I am sixty four year old. I need your help to solve this problem.

(Complaint, attached letter to NYS Div. of Human Rights). The letter thus states that Bassett made the comment about Plaintiff being "too old" on September 23, 2007. However, the undisputed affidavits submitted by Defendant's witnesses indicate that Plaintiff's employment was terminated four days earlier, on September 19, 2007. (Docket No. [#45-2]). Consequently, Plaintiff's letter indicates that it was four days after his employment was terminated that Bassett made the comment about him being too old. This letter, which is part of Plaintiff's sworn Complaint [#1], is inconsistent with Plaintiff's sur-reply [#58], since the former indicates that Bassett made the comment on one occasion after Plaintiff's employment was terminated, while the latter indicates that Bassett made the comment multiple times during the term of Plaintiff's employment.

Additionally, Plaintiff submits an affidavit from Richard Hennessy ("Hennesy"), who states that he is a former employee of Defendant, who worked during the same period as Plaintiff. Hennessy states that MacIntyre and Bassett "regularly hired much younger employees," and offered them "better hours than Mr. Fadia." Hennessy further states that "the evaluations that Mr. Fadia received seemed to be extremely critical." The Court finds this last statement curious for at least two reasons: First, it refers to multiple evaluations, when Plaintiff apparently received only one evaluation; and second, it is unclear how Hennessy could have seen Plaintiff's evaluation, since Plaintiff testified at his deposition that he had never even seen his own evaluation before that day. (Pl. Dep. at 59-62). In any event, Hennessy further opines that Defendant treated Plaintiff unfairly by making him perform "tasks that were not related to his job function." Hennessy also submits a second sworn statement, which states, in pertinent par: "I worked for Rochester Hotel Plaza between June 13, 2005 - Nov 27, 2009. They let me go because of my age. I am over 55 years old I need your help. I lost my vacation for this year." [sic]

Subsequently, Plaintiff submitted an affidavit [#61] from another former co-worker, John Sdoia ("Sdoia"). Sdoia indicates that Plaintiff sometimes worked "extra hours," and that Defendant had Plaintiff "do a lot of assignments outside his work title." Additionally, Sdoia states that, "[t]he management seemed to watch [Plaintiff] very close, riding him and even criticizing him in front of other employees. His immediate boss, Ray Bassett, considered by most to be a poor choice for the job, was eventually terminated for poor job performance." (*Id.*).

Thereafter, Defendant submitted a sur-sur-reply [#62, 63], consisting of an additional affidavit from Guzman, and an additional affirmation from Defendant's

counsel. These submissions generally reiterate Defendant's earlier arguments, and contend that Plaintiff's sur-reply attempts to contradict his sworn deposition testimony.

On May 13, 2010, Plainitiff and Defendant's counsel appeared before the Court for oral argument. At that time, Plaintiff indicated that he had spoken to several attorneys, but none would accept his case. The Court granted Plaintiff and additional opportunity to attempt to retain counsel, and adjourned the matter for two weeks. On May 19, 2010, Plaintiff faxed a letter to the Court, indicating that he could not retain an attorney, and asking the Court to issue a decision.

ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996). Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific

facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)(citations and internal quotations omitted). However, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829.

Moreover, the party opposing summary judgment may not create a triable issue of fact "merely by submitting an affidavit that disputes his own prior sworn testimony." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)(citations omitted). Rather, such affidavits are to be disregarded. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.

1987)(citations omitted).

Additionally, where, as here, the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citation omitted).

Plaintiff's claim is pursuant to the ADEA, which prohibits discrimination on the basis of age. 29 U.S.C. § 623. To establish a prima facie case of discrimination under the ADEA, a plaintiff must show four things: (1) he is a member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466-67 (2d Cir. 2001) (citations omitted), *cert den.* 534 U.S. 993 (2001). Discrimination claims such as the instant one are analyzed using the three-tier burden-shifting test "set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Valentine v. Standard & Poors*, 50 F.Supp.2d 262, 281-82 (S.D.N.Y. 1999)(Citations and internal quotations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 466. Under the first tier of the *McDonnell Douglas* test, the plaintiff must establish a prima facie case.[10] If the plaintiff establishes a prima facie case,

> the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's discharge [or other adverse employment action]. At this stage, the employer need only articulate--but need not prove-- the existence of a nondiscriminatory reason for its

---

[10] It is clear that "the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion as the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (emphasis in original, citation and internal quotation marks omitted).

decision. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Once defendant meets its burden of production, the burden shifts back to plaintiff. Under the third tier of the *McDonnell Douglas* test, plaintiff bears the ultimate burden of proving that the reason proffered by the employer is a pretext for unlawful discrimination. In order to survive a motion for summary judgment, plaintiff must establish a genuine issue of material fact as to whether the employer's reason . . . is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.

*Valentine*, 50 F.Supp.2d at 281-82 (Citations and internal quotations omitted); *see also,* *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

At the third tier of the McDonnell Douglas test, simply proving that the employer's proffered reason was false may, or may not, establish the required proof of discriminatory intent:

> The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct. In other words, it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (*quoting Reeves v. Sanderson Plumbing Prods. Inc.,* 120 S.Ct. 2097, 2108-09 (2000)). In this regard, "[t]he relevant factors . . . include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case." *Id*. (internal quotation marks omitted).

Applying the foregoing applicable principles of law, the Court finds at the outset that Plaintiff cannot use his sur-reply to create an issue of fact, since it contradicts his earlier sworn deposition testimony. At the deposition, Plaintiff never indicated that Bassett told him that he was too old, and indicated that his discrimination claim was

based solely on the matters that he testified about at the deposition. Plaintiff also did not include Bassett's alleged comment in the papers that he initially filed in opposition to Defendant's motion. Consequently, the Court will not consider Plaintiff's contention that Bassett told him that he was "too old," included in the sur-reply.

The Court will next consider whether Plaintiff can demonstrate a prima facie case under the ADEA. In that regard, it is clear that Plaintiff is within the protected class, and that he suffered an adverse employment action. Further, the Court will assume that Plaintiff was qualified for the position. However, Plaintiff has not shown that Defendant terminated his employment under circumstances giving rise to an inference of age discrimination. Plaintiff has not shown that his age played any role in Defendant's decisions to warn him, and then terminate his employment.

To the contrary, at his deposition Plaintiff repeatedly indicated his belief that his termination was engineered by Bassett, because Bassett had a personal vendetta against him. The vendetta was not based on Plaintiff's age, but instead, was allegedly due to the fact that Plaintiff had accused Bassett of stealing items from the hotel. Plaintiff has presented no evidence that any of his other supervisors were aware of Bassett's alleged vendetta.[11] On this point, the Court notes that it is undisputed that after the incident in which Plaintiff was allegedly found sleeping, he refused to meet with his supervisors, and there is no indication that Plaintiff ever subsequently notified Defendant that he had been framed by Bassett. Consequently, viewing the evidence in the light most-favorable to Plaintiff, he contends that Defendant terminated his employment, based upon information and incidents that were fabricated by Bassett,

---

[11]As mentioned earlier, Plaintiff makes only a conclusory statement that "all departments" of the hotel conspired to have him fired. (Plaintiff's Response [#50] at 4).

because Bassett had a personal grudge against him. Such evidence fails to establish an essential element of a prima facie case under the ADEA.

Even assuming that the Court considered Plaintiff's sur-reply, in which he contends that Bassett told him he was "too old," such a stray comment is insufficient, without more, to create a triable issue of fact to defeat summary judgment. *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination. . . . [S]uch comments, without more, cannot get a discrimination suit to a jury.") (citation omitted). Here, Plaintiff has not come forward with any evidence of discriminatory animus, apart from Bassett's alleged stray remark, and Hennessy's conclusory assertion that, "I recall that the supervisors offered the younger employees much better hours than Mr. Fadia." (Sur-reply [#58]).[12] Such a showing is insufficient to defeat Defendant's summary judgment motion.

Moreover, the Plaintiff's subject belief that he was discriminated against is insufficient to create a triable issue of fact. *See, Jones v. Potter*, No. 01-CV-0546E(SC), 2004 WL 625276 at *5 (W.D.N.Y. Feb. 2, 2004) ("[P]laintiff's subjective belief and assertion that he was more qualified for the position of Associate Supervisor does little to support an inference that defendant's decision not to select him for an interview was due to his age or race.") (*citing Hines v. Hillside Children's Ctr.*, 73 F.Supp.2d 308, 320 (W.D.N.Y.1999)); *see also, Jugueta v. Perry*, No. 95 CIV. 10303 (DC), 1997 WL 742535 at *6 (S.D.N.Y. Dec. 1,1997) (""The interviewers' lack of eye contact with plaintiff during the interview is nothing more than 'metaphysical' speculation by the plaintiff. Without more, such speculation does not constitute evidence sufficient to

---

[12] Hennessy fails to identify either the supervisors or the employees.

defeat a summary judgment motion.") (citation omitted).

Further assuming that Plaintiff could establish a prima facie case, Defendant has come forward with a legitimate non-discriminatory reasons for terminating his employment, namely, that he was a "sub-standard employee." Plaintiff maintains that such explanation is false. However, he cannot show that "it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." As already discussed, Plaintiff contends that Defendant terminated his employment because it believed the false accounts provided by Bassett, who had a personal vendetta against him unrelated to his age. However, Plaintiff cannot show that Defendant knew that Bassett's reports were false, or that his age played any role in Defendant's decision to terminate his employment.

## CONCLUSION

For all the foregoing reasons, the Court must find that Plaintiff cannot establish a claim of age discrimination. Consequently, Defendant's application for summary judgment [#42] is granted and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: Rochester, New York
     May 19, 2010

                                  ENTER:

                                  /s/ Charles J. Siragusa
                                  CHARLES J. SIRAGUSA
                                  United States District Judge